## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

Bennie Veal )
_____ )
_____ )
_____ )
_____ )
_____ )
Plaintiff(s) )           Gen No: 2014 L 427
vs. )
_____ )
Rubbermaid Commercial Products, LLC )
_____ )
_____ )
_____ )
_____ )
Defendant(s) )

2014 JUN 30 AM 9: 47
IN SHERIFF'S HANDS
NEW CASTLE COUNTY

### SUMMONS

To each defendant: Corporation Service Company c/o Rubbermaid Commerical Products, LLC 2711 Centerville Rd., Suite 400
Wilmington, DE 19808

You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS _____ JUN 1 9 2014 _____

SEAL
OF
COURT

*Keith Brin*
KEITH BRIN, Clerk of Court

2014 JUN 30 AM 9: 46
IN SHERIFF'S HANDS
NEW CASTLE COUNTY

Prepared by:
Attorney's Name: Jeffery O. Katz _____

Address: 1 North LaSalle, Suite 2100 _____

City: Chicago _____  State: IL _____

Phone: 312.223.1699 ____  Zip Code: 60802 ____

Fax: 312.223.8549 ____

ARDC: 6283209 ____

(If service by facsimile transmission will be accepted, the telephone number of the plaintiff or plaintiff's attorney's facsimile machine is additionally required.)

Date of Service _____, 20_____ (to be inserted by officer on copy left with defendant or other person).

171-138 Rev 6/13

SHERIFF'S FEES

( Service and return ...................................... $ _____
(
( Miles_____ ...................................... $ _____
(
( Total ...................................... $ _____

_____

Sheriff of _____ County

I certify that I served this summons on defendants as follows:

(a)-(Individual defendants – personal):
(The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons; and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant).

_____
_____
_____
_____

(b)-(Individual defendants – abode):
By leaving a copy of the complaint at the usual place of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons. (The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person).

_____
_____

and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of defendant | Mailing Address | Date of mailing |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(c)-(Corporate defendants):
By leaving a copy and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant corporation | Registered agent, officer or agent | Date of Service |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(d)-(Other service):

_____
_____
_____

_____ Sheriff of _____ County

By: _____
(Deputy)

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

*F I L E D*

JUN 17 2014

*Keith Brin*
CIRCUIT CLERK

BEN VEAL                                           )
_____ )
                                    Plaintiff(s)   )
                        vs.                        )     Gen No: _____ 14 L 427 _____
                                                   )
RUBBERMAID COMMERCIAL PRODUCTS, LLC                )
_____ )
                                    Defendant(s)   )


**JURY DEMAND**


The ☒ plaintiff(s) ☐ defendant(s) in the above entitled cause demand a jury for trial of said cause.


_____

_____


**By:**   /s/Jefferey O. Katz
       _____
              Their Attorney(s)/Pro Se


-IN SHERIFF'S HANDS
NEW CASTLE COUNTY
2014 JUN 30  AM 9:46


**Prepared by:**
**Attorney's Name:**   Jefferey O. Katz
**Address:**   One N. LaSalle Street, Suite 2100
**City:** Chicago                    **State:**  Illinois
**Phone:** 312.332.1699        **Zip Code:**  60602
**ARDC:**  6283209
**Fax:**  312.223.8549
**E-mail address:**  cmarte@pattersonlawfirm.com


171-109 (Rev 10/13)

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT,
LAKE COUNTY, ILLINOIS

BEN VEAL )
)
vs. )  General No. _____
)
RUBBERMAID COMMERCIAL PRODUCTS, LLC )

F I L E D
JUN 17 2014
1 4 L   4 2 7
Keith Brin
CIRCUIT CLERK

## CERTIFICATE OF ATTORNEY – CIVIL DIVISION

1) Pursuant to Local Rule 3.01(c), I hereby certify that:

[x] There has been no previous Voluntary or Involuntary Dismissal of the subject matter of this litigation.

[ ] There has been a previous Voluntary or Involuntary Dismissal of the subject matter of this litigation and at the time of dismissal that Case No. _____ was assigned to the

Honorable _____

[ ] There is no other litigation presently pending in the county involving these parties.

[ ] There is other litigation presently pending in the county involving the parties to or subject matter to this lawsuit and that case(s) is/are assigned Case No.(s) _____ which is/are assigned to the

Honorable _____

2) Are you seeking any injunctive relief?

[ ] Yes - Select the appropriate case subtype under the Chancery-CH heading below.
[x] No - Select the appropriate non-Chancery case subtype below.

This data is being gathered for administrative purposes and will not be used for any other purpose.

**Arbitration – AR**
[ ] Arbitration/Tort
[ ] Arbitration/Contract

**Chancery – CH**
[ ] Residential Mortgage Foreclosure
[ ] Residential Mortgage Foreclosure w/Mechanics Lien
[ ] Non-Residential Mortgage Foreclosure
[ ] Injunction
[ ] Specific Performance
[ ] Mechanics Lien Foreclosure
[ ] Complaint for Rescission
[ ] Partition
[ ] Quiet Title
[ ] Class Action
[ ] Miscellaneous

**Eminent Domain – ED**
[ ] Eminent Domain
[ ] Condemnation

**Law Magistrate – LM**
[ ] Forcible Entry and Detainer
[ ] Replevin
[ ] Detinue
[ ] Distress for Rent
[ ] Enroll Judgment
[ ] Confirm Arbitrator's Award
[ ] Confession of Judgment

**Law – L**
[ ] Tort
[x] Contract
[ ] Product Liability
[ ] Medical Malpractice
[ ] Legal Malpractice
[ ] Forcible Entry and Detainer
[ ] Replevin
[ ] Accounting Malpractice
[ ] Enroll Judgment
[ ] Confirm Arbitrator's Award

**Municipal Corporation – MC**
[ ] Annexation
[ ] Disconnection

**Miscellaneous Remedy – MR**
[ ] Declaratory Judgment
[ ] Corporation Dissolution
[ ] Election Contest
[ ] Mandamus
[ ] Habeas Corpus
[ ] Review of Administrative Proceeding/Statutory
[ ] Review of Administrative Proceeding/Certiorari
[ ] Quo Warranto
[ ] Change of Name
[ ] Forfeiture
[ ] Fugitive from Justice
[ ] Search Warrant
[ ] Application for Eavesdropping Device
[ ] Registration of Foreign Judgment
[ ] Request for Subpoena/ Foreign Jurisdiction
[ ] Miscellaneous

**Probate – P**
[ ] Decedent/Testate > $15,000
[ ] Decedent/Intestate > $15,000
[ ] Decedent/Testate $15,000 or less
[ ] Decedent/Intestate $15,000 or less
[ ] Guardianship of Person/ Disabled Person
[ ] Guardianship of Estate/ Disabled Person
[ ] Guardianship of a Person and Estate/Disabled Person
[ ] Guardianship of Person/ Minor
[ ] Guardianship of Estate/Minor
[ ] Guardianship of Person and Estate/Minor
[ ] Proof of Heirship Alone

**Tax – TX**
[ ] Deeds
[ ] Objections
[ ] Disposition of Collections of Judgment of Settlement

Print Name   Jefferey O, Katz _____

Signature   /s/Jefferey O. Katz _____

[X] Attorney          [ ] Pro-se

171-366 (Rev 10/13)

Firm ID # 45052

CHRISTOPHER C. STARCK

F I L E D

JUN 17 2014

*Keith Brin*
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

BENNIE VEAL                          )
                                     )
    Plaintiff,                       )       Case No.    1 4 L   4 2 7
                                     )
    v.                               )
                                     )       **JURY TRIAL DEMANDED**
RUBBERMAID COMMERCIAL                )
PRODUCTS, LLC                        )
                                     )
    Defendant.                       )

## COMPLAINT

Plaintiff, **BEN VEAL** ("Plaintiff"), by and through his attorneys, THE
PATTERSON LAW FIRM, LLC, asserts the following against Defendant,
**RUBBERMAID COMMERCIAL PRODUCTS, LLC,** ("RCP") and in support states as
follows:

## INTRODUCTION

1.    This case involves a breach of contract and acts of fraud in relation
to Plaintiff's agreement to license his inventions to Rubbermaid.

2.    Rubbermaid's sales data is inaccurate and self-conflicting,
Rubbermaid's royalty and licensing payments are too low, and Rubbermaid
refuses to permit Plaintiff to exercise his right to inspect the sales data from
which all royalty and commission payments are calculated, as required by the
parties' agreement.

1

*NOTICE*

BY LOCAL RULE 3.12

THIS CASE IS HEREBY SET FOR A SCHEDULING
CONFERENCE IN COURTROOM 2030 ON 9-11
2014, AT 9:30 (AM) PM AT 18 NORTH COUNTY STREET,
WAUKEGAN, ILLINOIS. FAILURE TO APPEAR MAY RESULT
IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT
BEING ENTERED.

3.     As a result, Plaintiff seeks damages for breach of contract and compensatory and punitive damages for common law fraud.

## PARTIES

4.     Plaintiff, BENNIE VEAL, was, at all times material to the Complaint, an Illinois resident now residing at 1494 Sutton Circle, Wauconda, IL 60084.

5.     Defendant, RUBBERMAID COMMERCIAL PRODUCTS, LLC, is a corporation incorporated in the State of Delaware and is headquartered in Winchester, Virginia.

## JURISDICTION AND VENUE

6.     Jurisdiction is proper under 735 ILCS 5/2-209 of the Illinois Code of Civil Procedure because the causes of action in this Complaint arose out of the transaction of business within Illinois and the commission of a tortuous act within Illinois.

7.     The acts which give rise to this cause of action occurred in Lake County, Illinois, thereby making venue proper under 735 ILCS 5/2-101(2) of the Illinois Code of Civil Procedure.

## ALLEGATIONS COMMON TO ALL COUNTS

8.     Plaintiff is a hard-working African-American businessman, engineer, inventor, and family man.

9.     In 1997, Plaintiff used his engineering expertise to create and patent the AutoFlush Tank® (AFT). The AFT is an automatic flushing invention

2

made for at-home use, allowing the homeowner to operate his or her toilet in a hands-free manner.

10. U.S. Patent No. 5,603,127, titled "Auto Flush for Tank Toilet," was issued on February 18, 1997.

11. Plaintiff also used his engineering expertise to create and patent the Automatic Flushing And Seat Raising Arrangements for Toilets, for which U.S. Patent No. 6,618,864, titled "Automatic Flushing and Seat Raising Arrangements for Toilets," was issued on September 16, 2003.

12. In May of 2000, Ben and Jacqueline Veal formed the LeVealé Company ("LeVealé Company") in Clarkston, MI. The LeVealé Company is a Michigan Corporation.

13. LeVealé Company designed, developed, patented, and launched two automatic, touch-free flushing devices: the AFT, created for residential and hotel restrooms, and the IntelliFlush® ("IntelliFlush"), created for commercial and institutional restrooms.

14. In April of 2001 Plaintiff and Robert P. Berman, the President of Technical Concepts L.P. ("TC"), entered into a manufacturing and distribution agreement in regards to Plaintiff's patent numbered 5,603,127 and pending provisional patent application, Serial No. 60/194,806, titled "Automatic Toilet Operator." (Attached as Exhibit A, 2001 Agreement).

15. TC is an Illinois Limited Partnership located at 1301 Allanson Road, Mundelein, Illinois 60060.

3

16.    TC is a technology innovator, deriving significant revenue from patented products.  Specifically, it generates revenue from products in the air care, skin care, surface care, and touch-free categories, through the sales of fixtures, proprietary dispensers and associated refills.

17.    On November 1, 2003, Plaintiff executed a Supplemental Manufacturer's Representative Agreement with TC, which entitles Plaintiff to "10% on product and 7% on dispensers at printed distributor prices. Commission on orders at lower than printed distributor prices will be changed accordingly to 5% on product and dispensers.  Commission is paid by the 25th of the month for the prior month's shipments." (Exhibit B, Supplemental Manufacturer's Representative Agreement).

18.    In 2003, TC contracted Kenneth Muderlak ("Muderlak") to work with Plaintiff to enhance his AutoFlush Tank actuator and sensor, making improvements to U.S. Pat. No.'864 that would be reflected in U.S. Pat. No. 7,140,050, which, the parties agreed, would replace both actuator designs and utility in patent '127 and '864.

19.    The parties agreed to let patent '127 expire.

20.    All parties agreed that Plaintiff, and not Muderlak, would be named as inventor for these improvements.

21.    Despite the parties' agreement, Muderlak, in filing the patent, listed himself as the inventor and left Plaintiff's name off the patent.

22.    TC admitted fault and entered into a new agreement on August 9, 2005, with substantially the same provisions as the 2001 agreement, in hopes

4

of avoiding Plaintiff's lawsuit for theft of Plaintiff's patent (Attached as Exhibit C, Agreement).

23.     The Agreement grants TC an exclusive worldwide license, even as to Plaintiff, to manufacture, have manufactured, sell, offer to sell, use, import, promote, and distribute Licensed Products for the term of the Agreement. (Exhibit C, paragraph 1).

24.     The Agreement defines Patent Rights as U.S. Patent No. 5,603,127, titled "Auto Flush for Tank Toilet," which was issued on February 18, 1997, and U.S. Patent No. 6,618,864, titled "Automatic Flushing And Seat Raising Arrangements For Toilets," which was issued on September 16, 2003 ("Patent Rights"). (Exhibit C, page 1).

25.     The Agreement defines Licensed Products as the Patent Rights relating to an automatic toilet flush system for tank type toilets covered by the scope of the subsisting and unexpired claims of the Patent Rights ("Licensed Products"). (Exhibit C, page 1).

26.     The Agreement requires Plaintiff to provide consulting and other services to TC relating to the design, development, production, and installation of the Licensed Products for their intended use. (Exhibit C, paragraph 3).

27.     TC must compensate Plaintiff an amount of seventy five dollars ($75.00) per hour for Plaintiff's consulting and other services rendered to TC.

28.     TC must pay Plaintiff a royalty fee of one dollar per unit for each Licensed Product that Plaintiff developed in whole or in part and that TC sold to distributors or directly to buildings. (Exhibit C, paragraph 5).

5

29.     TC must pay Plaintiff a royalty fee of two dollars per unit for each Licensed Product that Plaintiff developed in whole or in part and that TC sold to retailers at a higher price than TC sold to distributors. (Exhibit C, paragraph 5).

30.     Paragraph 6 of the Agreement requires TC to provide Plaintiff with a true and accurate statement setting forth the amount of Licensed Products that Plaintiff developed in whole or in part and that TC sold to distributors, buildings, retailers, and OEM producers during the preceding calendar month of each of TC's payments. (Exhibit C, paragraph 6).

31.     Paragraph 10 of the Agreement requires TC to keep accurate records containing all the information required for the computation and verification of the royalties to be paid pursuant to paragraph 5. (Exhibit C, paragraph 10).

32.     Plaintiff has the right to inspect these records at reasonable times during normal business hours after giving TC reasonable prior notice. (Exhibit C, paragraph 10).

33.     Paragraph 7 also requires the commission payments described in the Supplemental Manufacturer's Representative Agreement. (Exhibit C, paragraph 7).

34.     On February 27, 2008 Rubbermaid acquired TC and assumed TC's responsibilities and obligations under the Agreement.

35. Instead of the growth that TC had anticipated the acquisition would bring, the acquisition destroyed TC. Since 2010, only a few of the TC personnel who were brought over to Rubbermaid remain with the company.

36. Rubbermaid's acquisition of TC also destroyed Plaintiff's relationship with TC. After TC's former VP of Sales and Marketing resigned from Rubbermaid in 2010, Plaintiff's primary contact at Rubbermaid eventually became Samir Jhaveri.

37. Samir Jhaveri has displayed little interest in Plaintiff's concerns and has perpetuated breaches of the Agreement.

38. Since January 10, 2012, Plaintiff has been directed to only communicate with Rubbermaid's attorney Geoff Rogers, who challenges the Agreement by making false claims about Plaintiff's products.

39. Plaintiff has not received his due royalties from Rubbermaid pursuant to the Agreement, and, upon information and belief, Rubbermaid has intentionally misrepresented and withheld information regarding the amount of products it sold that Plaintiff was entitled to royalty payments for.

40. Plaintiff, believing he was not receiving his royalties pursuant to paragraph 5 of the Agreement, repeatedly attempted to enforce his right to review Rubbermaid's records containing the information required for the computation of the royalties, pursuant to paragraph 6 and 10 of the Agreement. (Exhibit C, Paragraphs 6 and 10).

41. Plaintiff has previously retained other counsel to assist Plaintiff in obtaining a copy of Rubbermaid's records.

7

42.    In a letter dated April 29, 2013, Athanasios Papadopoulos, Plaintiff's former counsel, reaffirmed earlier requests to review Rubbermaid's records and notified Rubbermaid that its previously-released one-page summary schedule did not comply with Rubbermaid's obligations under paragraph 10 of the Agreement. (Exhibit D, 4.29.13 Letter).

43.    To date, Plaintiff and Plaintiff's former counsel have only been able to receive a sales report summary from January of 2009 through September of 2013, which purports to set forth the total amount of products sold each month.

44.    Plaintiff, being unable to review all of Rubbermaid's records pursuant to the Agreement, believed Rubbermaid was not paying him royalty fees for all the Licensed Products it sold and believed Rubbermaid was misrepresenting what information it did provide to Plaintiff.

45.    Because of this, Plaintiff hired FDRO Co., a forensic data research and organization company, to compare Plaintiff's material to what information Rubbermaid produced to Plaintiff, and to compare different material Rubbermaid produced for inconsistencies.

46.    Plaintiff and FDRO discovered many inconsistencies, including but not limited to:

      a.    Conflicting information Rubbermaid produced to Plaintiff on two different occasions for 2007 sales information;

8

b. Conflicting information Rubbermaid produced to Plaintiff on two
different occasions for June 2007 defective or returned products
information;

c. Conflicting information Rubbermaid produced to Plaintiff on two
different occasions for March 2006 regarding the amount of
units sold;

d. Conflicting information Rubbermaid produced to Plaintiff on two
different occasions for February 2006 to June 2006 regarding
the amounts of units sold;

e. Discrepancies between Rubbermaid's 1099-MISC tax forms filed
for the years 2003, 2004, 2005, 2010, and 2012 and the
amounts Plaintiff received from Rubbermaid;

f. Rubbermaid neglecting to include sales data for two products
that FDRO has sales data for, for the months of June of 2011
and March of 2009;

g. Out of a 57 month period, Rubbermaid's only paying Plaintiff
royalty payments commensurate with its own listed sales
information for a total of seven months; and

h. Discrepancies between Rubbermaid's previous reported sales
for the first quarter of 2012 and it's later declared counts of the
same period.

47.    Upon information and belief, Rubbermaid has sold Plaintiff's

Licensed Products to retailers such as Touch Free Concepts, Grainger's, and

9

Sam's Club, among other retailers, but has never paid Plaintiff the amount in royalties that the Agreement requires for Rubbermaid's sales to retailers, pursuant to paragraph 5 of the Agreement. (Exhibit C, Paragraph 5).

48.    In an email dated October 7, 2009, Jerry McDermott, from Rubbermaid, told Plaintiff that Rubbermaid can commit to 80,000 AutoFlush Tank units per month in January 2010.

49.    However, Plaintiff never received royalty payments commensurate with anything near 80,000 units sold.

50.    Rubbermaid has interfered with and prevented Plaintiff from directly communicating with retailers to learn how many units of the Licensed Products the retailers bought from Rubbermaid.

51.    Despite Rubbermaid's efforts, on May 5, 2011 and May 19, 2013, Ms. Rescate from CitiKitty reported sold out conditions lasting a few months each time she tried to purchase the product from Rubbermaid.

52.    Rubbermaid never paid Plaintiff an amount of royalty payments commensurate with a sold out condition, which could mean 80,000 units sold or more.

53.    In an email dated June 15, 2012, Geoff Rogers, Rubbermaid's patent counsel, in response to Mr. Veal's attorney's request for an audit, provided the sales figures from January through March 2012. (Exhibit E, 6.15.12 Email). This number was 1019.

54.    However, Plaintiff never received a check for royalty payments commensurate with 1019 units sold.

10

55.     Rubbermaid has also failed to fulfill its implied duty of good faith and fair dealing under the contract by, in addition to other acts and omissions:

  a.  Failing to market the Licensed Products, even though the Agreement granted Rubbermaid an exclusive worldwide license, even as to VEAL, to manufacture, have manufactured, sell, offer to sell, use, import, promote and distribute Licensed Products for the term of the Agreement;

  b.  Failing to market the AutoFlush at Rubbermaid's booth in a restaurant trade show held in Chicago in 2008, and failing to include any of the Licensed Products in its May 2011 YouTube video where Keither Lester and Jenn Schneider, from Rubbermaid's Marketing Team, demonstrated other similar products from Rubbermaid's "Smarter Washroom" line;

  c.  Samir Jhaveri's, with whom Plaintiff was instructed to communicate for matters regarding the Agreement, failure to reply to Plaintiff's emails and other correspondences for six months;

  d.  Rubbermaid's business practice of thwarting distributors' efforts to purchase the Licensed Products by raising the opening order and minimum order requirements and making online ordering unnecessarily difficult, despite Plaintiff's objections;

  e.  Rubbermaid's failure to reasonably assist CitiKitty, a distributor who purchased amounts of Licensed Products, when

Rubbermaid sent CitiKitty the wrong order of 48 plastic bins in May of 2011, requiring Plaintiff to expend extraordinary effort to convince Rubbermaid of its mistake with CitiKitty and maintain CitiKitty as an active distributor;

f.  Rubbermaid's termination of its employee who, in November of 2011, released a report showing that Rubbermaid had sold 152 units of Plaintiff's Licensed Product and sent a check for $88 of royalty payments. (Exhibit F, Disclosed Report and $88 Payment);

g.  Rubbermaid's failure to fulfill an order from CitiKitty to purchase additional Licensed Products in March of 2012, resulting in Plaintiff having to plead with Rubbermaid to keep CitiKitty's account active; and

h.  Geoff Rogers's letter, dated June 1, 2012, after royalty payments were made pursuant to the Agreement since 2005, suddenly took the position that the Agreement's Licensed Products did not include any of Plaintiff's products that Rubbermaid sold and continues to sell, and which even requested that Plaintiff pay back all the royalties he received since 2009.

56.    Upon information and belief, Rubbermaid continues to sell amounts of Licensed Product.

57. Rubbermaid has not issued Plaintiff a royalty payment since November of 2011.

58. Rubbermaid has been deducting the amount of Licensed Products that were returned to Rubbermaid after Rubbermaid sold them.

59. The Agreement requires Rubbermaid to pay Plaintiff per unit of Licensed Products sold and contains no language that permits Rubbermaid to withhold royalty payments for Licensed Products that were sold and later returned to Rubbermaid.

60. Since the Supplemental Manufacturer's Representative Agreement was executed in 2003, Plaintiff has received 2 commission payments of 10%.

61. CitiKitty has reported her purchase orders to Plaintiff, with an average of her quarterly orders being more than $1,800.

62. Despite CitiKitty's quarterly payments, Plaintiff only received one commission check from Rubbermaid for commissions earned from CitiKitty. The check was from April of 2012.

63. The only other commission check Mr. Veal received was for an order from Frontgate catalog in 2004.

64. By Rubbermaid's own admission, it has expanded sales of the Licensed Products to Latin America, Canada, and the Asian Pacific, yet has never made payments to Plaintiff commensurate with those expected of an international sales market.

65. Upon information and belief, Rubbermaid has sold Licensed Products to distributors included in the Supplemental Manufacturer's

13

Representative Agreement but has not paid Plaintiff his entitled commission payments.

66. Plaintiff has spent countless hours providing consulting and other services to Rubbermaid relating to the design, development, production, and installation of Licensed Products for their intended use.

67. Plaintiff has not received payment from Rubbermaid for his consulting and other services.

68. Paragraph 11 of the Agreement requires Rubbermaid to mark all Licensed Products sold and distributed with proper notice of patent as prescribed under 35 U.S.C. § 287 or other applicable laws, where feasible and practical.

69. Rubbermaid placed patent '050 on the AFT box, but excluded the base patent '864 from any showing or reference.

70. From 2005 to date, despite Plaintiff's repeated pleas and utilization of different attorneys, Plaintiff has been unable to secure Rubbermaid's compliance with provisions of its agreements.

## COUNT I – BREACH OF CONTRACT

71. Plaintiff restates and re-alleges Paragraphs 1 through 69 as if fully set forth in this Paragraph 70.

72. On November 1, 2003, for good and valuable consideration, Plaintiff and TC executed a Supplemental Manufacturer's Representative Agreement, which entitles Plaintiff to various commission payments.

14

73.    On August 9, 2005, Plaintiff and TC, for good and valuable consideration, executed a manufacturing and distribution agreement ("Agreement").

74.    Both agreements are enforceable and were validly executed.

75.    Plaintiff performed all of his obligations under both agreements.

76.    Plaintiff performed all conditions precedent under both agreements.

77.    Rubbermaid assumed all of TC's contractual obligations with Plaintiff on February 27, 2008.

78.    Rubbermaid breached the Agreement in a variety of ways, including:

> a. Failing to make available to Plaintiff its records containing all the information required for the computation and verification of the royalties to be paid pursuant to the Agreement, as described above. (Exhibit C, paragraph 10).
>
> b. Failing to furnish Plaintiff with a true and accurate statement setting forth the amount of Licensed Products Rubbermaid sold with each royalty payment, as described above. (Exhibit C, paragraph 6).
>
> c.  Failing to mark Licensed Products where feasible and practical, as described above. (Exhibit C, paragraph 11).
>
> d. Failing to take advantage of appropriate and effective opportunities to market Licensed Products, as described above.

15

e.  Failing to make royalty payments of $1 or $2 per unit sold, as described above. (Exhibit C, paragraph 5).

f.  Acting in violation of its implied duty of good faith and fair dealing, as described above.

g.  Failing to pay Plaintiff his commission payments, as described above. (Exhibit C, paragraph 7).

h.  Failing to compensate Plaintiff an amount of $75 dollars an hour for Plaintiff's consulting and other services to Rubbermaid, as described above. (Exhibit C, paragraph 3).

i.  Withholding royalty payments for Licensed Products that were returned to Rubbermaid after Rubbermaid sold the Licensed Product, as described above.

79.  Rubbermaid has also breached the Supplemental Manufacturer's Representative Agreement by blatantly failing to make the required commission payments to Plaintiff, as required and as described above. (Exhibit B, Supplemental Manufacturer's Representative Agreement).

80.  Rubbermaid's breaches of the agreements proximately caused substantial damages to Plaintiff, including lost revenue and profits, being unable to recoup the value of Plaintiff's services, opportunity cost for the years Plaintiff spent trying to compel Rubbermaid to comply with the agreements, emotional and financial harm from the owed but withheld royalty payments, and court costs and various attorneys to enforce the agreement.

16

81.     Rubbermaid's breaches were intentional.  Plaintiff and Plaintiff's previous attorneys repeatedly informed Rubbermaid that it was in breach of the Agreement, that it needed to produce its records to verify its royalty payments, and that what information Rubbermaid did produce was inconsistent with either Plaintiff's own sales information or with information Rubbermaid previously produced.

82.     Despite Plaintiff's efforts, Rubbermaid continues to sell Plaintiff's Licensed Products and, by its own admission, has expanded sales of the product to Latin America, Canada, and the Asian Pacific without making royalty, commission, or consulting payments and without producing its records to substantiate Plaintiff's claims.

WHEREFORE, Plaintiff, BEN VEAL, prays this Court enter Judgment in his favor and against Defendant in an amount of $50,000 to be determined at the time of trial; and such other relief as this Court deems proper and just.

### COUNT II – COMMON LAW FRAUD

83.     Plaintiff restates and realleges Paragraphs 1 through 81 as though fully set forth in this Paragraph 82.

84.     Plaintiff states, upon information and belief, that Rubbermaid has made and continues to make material lies to Plaintiff about the amount of the Licensed Products it has sold and, therefore, the amount of royalty payments Plaintiff is entitled to under the Agreement and Supplemental Manufacturer's Representative Agreement.

17

85.   Plaintiff has repeatedly made clear to Rubbermaid the discrepancies between the different sales numbers Rubbermaid has reported to Plaintiff for the same time periods, the discrepancies between Rubbermaid's royalty payments and the amount of sales figures Rubbermaid reported, the discrepancies between Rubbermaid's sales reports and Rubbermaid's tax filings, and the discrepancies between Rubbermaid's suppliers and Rubbermaid regarding the number of products sold, among other discrepancies.

86.   Despite knowing of the numerous discrepancies, Rubbermaid has inexcusably failed to permit Plaintiff to inspect Rubbermaid's sales data that is necessary to calculate royalty payments, as the Agreement requires.

87.   Upon information and belief, Rubbermaid's statements and actions were made and done with the specific intent to cause Plaintiff to believe that he was being paid the appropriate royalty amounts and commission payments so that Rubbermaid could continue to pay Plaintiff a lesser amount than he was entitled to.

88.   Upon information and belief, Rubbermaid has withheld the sales data to perpetuate its fraud so that Rubbermaid may continue to sell Licensed Products without Plaintiff's knowledge and without making full royalty and commission payments to Plaintiff.

89.   Rubbermaid led plaintiff to believe and reasonably rely upon Rubbermaid's erroneous sales reports and royalty payments, which damaged Plaintiff in that Plaintiff continued to receive less royalty and commission

payments than he was entitled to without being aware of the Rubbermaid's breach.

90.     Rubbermaid has been unjustly enriched to the extent it has benefits from Plaintiff's Licensed Products without paying to Plaintiff his entitled royalty and commission payments.

WHEREFORE, Plaintiff, BEN VEAL, prays this Court enter Judgment in his favor and against Defendant in an amount in excess of $50,000 to be determined at the time of trial; that this Court award punitive damages in Plaintiff's favor; and such other relief as this Court deems proper and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Dated: 6/9/14

Respectfully submitted,

Jefferey Ogden Katz
The Patterson Law Firm, LLC
One North LaSalle Street
Suite 2100
Chicago, IL 60602
Tel. 312-223-1699
Fax. 312-223-8549
Firm I.D.: 45052

Attorney for Plaintiff

19

Firm ID # 45052

## IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| BENNIE VEAL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| RUBBERMAID COMMERCIAL | ) | |
| PRODUCTS, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(b)

Pursuant to Supreme Court Rule 222(b), counsel for the above-named

plaintiff certifies that Plaintiff seeks money damages in excess of Fifty

Thousand and 00/100ths Dollars ($50,000).

Respectfully submitted,

Dated: 6/9/14

Jefferey Ogden Katz
The Patterson Law Firm, LLC
One North LaSalle Street
Suite 2100
Chicago, IL 60602
Tel.  312-223-1699
Fax. 312-223-8549
Firm I.D.: 45052

Attorney for Plaintiff

20

# AGREEMENT

This AGREEMENT (the "Agreement") is made and entered into as of the

of April, 2001, by and between BENNIE N. VEAL ("VEAL"), an individual

residing at 6621 Park Valley Drive, Clarkston, Michigan 48348, and

TECHNICAL CONCEPTS L.P. ("TECHNICAL CONCEPTS"), an Illinois

Limited Partnership located at 1301 Allanson Road, Mundelein, Illinois 60060.

## WITNESSETH:

WHEREAS, VEAL warrants that he is the owner of all right, title and interest in U.S.

Patent No. 5,603,127 titled "Auto Flush for Tank Toilet," which issued on February 18,

1997, and a pending provisional patent application, Serial No. 60/194,806, filed April 6,

2000 titled "Automatic Toilet Operator" (hereinafter the "Patent Rights") relating to an

automatic toilet flush system for tank type toilets covered by the scope of the claims of the

Patent Rights (hereinafter the "Licensed Products");

WHEREAS, VEAL is also in possession of certain knowledge and information directed to

construction and mounting of automatic toilet flush systems to a vast majority of existing tank

type toilets (hereinafter the "Know-How");

WHEREAS, TECHNICAL CONCEPTS desires to obtain an exclusive worldwide license

under the Patent Rights and Know-How, to manufacture, have manufactured, use, sell, offer to

sell and import Licensed Products under the terms and conditions set forth herein;

WHEREAS, TECHNICAL CONCEPTS desires to obtain exclusive rights to the worldwide

distribution of Licensed Products, which right shall be exclusive as to VEAL as well as all

other parties; and



PLAINTIFF'S
EXHIBIT
A

WHEREAS, TECHNICAL CONCEPTS desires to use the services of VEAL in the development and production of Licensed Products, and VEAL agrees to make his services available to TECHNICAL CONCEPTS to develop and produce Licensed Products for worldwide distribution by TECHNICAL CONCEPTS.

NOW, THEREFORE, in consideration of the mutual promises of the parties as set forth herein, and other valuable consideration, the adequacy of which is hereby acknowledged by the parties, it is agreed as follows:

1. VEAL hereby grants to TECHNICAL CONCEPTS a exclusive worldwide license, even as to VEAL, under the Patent Rights and the Know-How, to manufacture, have manufactured, sell, offer to sell, use, import, promote and distribute Licensed Products for the term of this Agreement, and any extensions thereof.

2. TECHNICAL CONCEPTS shall have all rights to any improvement inventions and patents on such improvements relating to the Patent Rights, Know-How, and/or Licensed Products, including those improvements developed in whole or in part by VEAL related to the patent Rights and/or Licensed Products. Such improvement inventions and improvement patents shall be included within the terms of the Agreement. TECHNICAL CONCEPTS shall bear the costs of the preparation, prosecution and maintenance of such improvement patents.

3. At the request of TECHNICAL CONCEPTS, VEAL shall provide consulting and other services to TECHNICAL CONCEPTS relating to the design, development, production, and installation of Licensed Products for their intended use as defined in the Patent Rights and Know-How. TECHNICAL

Dollars ($75.00) per hour, plus pre-approved expenses, for all time spent by VEAL in

meeting with TECHNICAL CONCEPTS relating to the Licensed Products, and for working

on projects authorized in advance in writing or by e-mail by an authorized agent of

TECHNICAL CONCEPTS.

4. When, in the sole judgment of TECHNICAL CONCEPTS, Licensed Products are

completely developed and ready for shipment to customers, TECHNICAL CONCEPTS shall

pay VEAL the amount of Ten Thousand Dollars ($10,000.00) to be applied as an advance

against royalties due to VEAL pursuant to paragraph 5 below.

5. VEAL shall receive from TECHNICAL CONCEPTS a royalty of One Dollar

($1.00) per unit for each Licensed Product sold to distributors or to direct to buildings. VEAL

shall receive a royalty of Two Dollars ($2.00) per unit for each Licensed Product sold to a

retailer at a higher price than Licensed Products are sold to distributors by TECHNICAL

TECHNICAL CONCEPTS shall pay VEAL a royalty of One Dollar ($ 1.00) for each unit of a

Licensed Product sold to such OEM producer. The One Dollar ($1.00) per unit royalty for OEM

sales can be modified by mutual agreement of the parties.

6.   Royalty payments pursuant to paragraphs 4 and 5 above shall be paid by

TECHNICAL CONCEPTS to VEAL quarterly, the first payment to be made within thirty (30)

days after the end of the first calendar quarter in which royalties are due subsequent to the

application of the advance against royalties set forth in paragraph 4 above. Subsequent royalty

payments shall be made within thirty (30) days after the end of each following calendar quarter.

With each payment, TECHNICAL CONCEPTS shall furnish VEAL with a true and accurate

statement setting forth the amount of Licensed Products sold to distributors, buildings, retailers, and OEM producers during the preceding calendar quarter.

7. At the sole discretion of TECHNICAL CONCEPTS, VEAL, or a sales organization under the control of VEAL, may be paid a commission by TECHNICAL CONCEPTS for sales generated by VEAL or by such sales organization. The rate of commission paid pursuant to this paragraph shall be determined by TECHNICAL CONCEPTS, and commissions payable pursuant to this paragraph shall be remitted within sixty (60) days following receipt of a proper invoice covering such commission or commissions. VEAL and/or the sales organization he controls shall obtain written permission from TECHNICAL CONCEPTS before
contacting or calling on any account or potential account to sell or offer for sale the Licensed Products.

8. VEAL makes the following warranties:

(a)     that he has the unencumbered authority to enter into this Agreement;

(b)     that no other person or entity has any ownership or license interest in the Patent Rights and/or Know-How, and that no other person or entity has, or could assert, a ship right in the Patent Rights and/or Know-How;

(c)     That the Licensed Products do not infringe upon any third party patent rights. _To the best of his Knowledge,_ *LB*

9. TECHNICAL CONCEPTS shall have the right, but shall be under no obligation; to prepare and file in the name of TECHNICAL CONCEPTS, applications for letters patent for the Licensed products in countries outside the United States. All rights in such applications and any patents issuing thereon shall be the property of TECHNICAL CONCEPTS, but shall be

subject to the terms and conditions of the Agreement. TECHNICAL CONCEPTS shall pay the -

entire cost of preparing, filing, prosecuting, and maintaining such foreign patent applications

and patents, and shall have the right to choose its own attorney for this purpose. VEAL will

cooperate in such filings by executing all required documents, delivering evidence of

inventorship, and executing assignments, and the like.

10. TECHNICAL CONCEPTS shall keep accurate records containing all the information

required for the computation and verification of the royalties to be paid pursuant to paragraph

5 above, and VEAL or his designated agent shall have the right to inspect such records at

reasonable times during normal business hours after giving TECHNICAL CONCEPTS

reasonable prior notice.

11. Where feasible and practical, TECHNICAL CONCEPTS agrees to mark all Licensed

products sold and distributed hereunder with proper notice of patent as prescribed under

35 U.S.C. § 287 or other applicable laws.

12. Should any letters patent licensed hereunder be infringed, TECHNICAL CONCEPTS

shall, in its own name and in the name of VEAL and at TECHNICAL CONCEPTS' own

expense and with diligence, have the right without obligation to prosecute any action necessary

to protect the rights of each of the parties under this Agreement. If TECHNICAL CONCEPTS

shall fail to do so, VEAL may, at VEAL's expense, prosecute any such action. Any damages,

costs, or other monetary recovery awarded as a result of such lawsuit shall be the sole property

of VEAL if he brings the lawsuit. If TECHNICAL CONCEPTS brings the lawsuit, any recovery

shall be for the account of TECHNICAL CONCEPTS, subject to the terms of this Agreement

and costs expended by TECHNICAL CONCEPTS in pursuing such lawsuit are deducted. The

13. With the expiration of the last patent covering the Licensed products herein, the royalty rates of paragraph 5 shall be reduced by seventy-five percent (75%) and shall continue at twenty-five percent (25%) of the royalty rate stated in paragraph 5 above based on the KnowHow and trade secrets initially provided by VEAL to TECHNICAL CONCEPTS, subject to the following:

(a)     In the event that any letters patent within the scope of this Agreement shall be declared invalid by a court of competent jurisdiction in a final decision from which no appeal is or can be taken, this Agreement shall be terminated as to that patent.

(b)     If TECHNICAL CONCEPTS shall fail to pay royalties in accordance with the terms of this Agreement, or shall otherwise fail to comply with the material terms of this Agreement, VEAL shall have the right to terminate this Agreement upon giving ninety (90) days' written notice to TECHNICAL CONCEPTS. If TECHNICAL CONCEPTS shall fail to pay all royalties in arrears, or otherwise fail to comply with the terms of this Agreement within such 90-day period, VEAL shall have the option to terminate this Agreement at the expiration of the 90-day period.

(c)     This Agreement may be terminated at either party's option upon receivership or bankruptcy of the other party, or if the other party should make an assignment for the benefit of creditors.

(d)     No termination of this Agreement shall relieve TECHNICAL CONCEPTS

of its obligation to pay to VEAL all royalties accrued to the time of termination.

14. The provisions of this Agreement shall be severable, and if any provision of this Agreement shall be held or declared to be illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not effect any other provision hereof, and the remainder of this Agreement, disregarding such invalid portion, shall continue in full force and effect as though such void provision had not been contained herein.

15. This Agreement contains the entire agreement between the parties hereto with respect to the subject matter and supersedes and cancels all previous written or oral understandings, agreements, negotiations, commitments, or any other writing or communications in respect of such subject matter. This Agreement may not be released, discharged, abandoned, changed, or modified in any manner except by an instrument in writing signed by each of the parties hereto.

16. This Agreement shall be deemed to be made and entered into pursuant to the laws of the State of Illinois, and, in the event of any dispute, shall be governed by and shall be construed and interpreted in accordance with the laws of the State of Illinois. Any action brought under this Agreement by either party shall be brought in one of the courts located in the State of Illinois.

17. The language used in this Agreement shall be deemed to be language chosen by both parties to express their mutual intent, and no rule of strict construction against either party shall apply to any term or condition of this Agreement.

18. The waiver by either of the parties of any breach of any provision hereof by the other party shall not be construed to be either a waiver of any succeeding breach of any such provision or a waiver of the provision itself.

19. Nothing herein shall be construed to place the parties in a relationship of partners or joint venturers, and neither party shall have the power to obligate of bind the other in any manner whatsoever.

TECHNICAL CONCEPTS, and shall be binding upon and inure to the benefit of the legal representatives and assigns of VEAL. This Agreement and License shall be assignable by TECHNICAL CONCEPTS only with the written approval of VEAL and shall be binding upon and inure to the benefit of the legal representatives and assigns of TECHNICAL CONCEPTS, except that TECHNICAL CONCEPTS may transfer this Agreement and License without the approval of VEAL upon the sale of the portion of the business of TECHNICAL CONCEPTS to which this Agreement and License pertains.

21. Any notice, payment, or statement required by this Agreement shall be in writing and either delivered personally or sent by registered or certified mail, postage prepaid, to the addresses first listed above. A party may designate another address by notice to the other. All notices shall be effective as of the date of personal delivery or mailing.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

BENNIE VEAL

ROBERT P. BERMAN
President Technical
Concepts, Inc An Illinois
Corporation General
Partner of Technical
Concepts, L.P.



**TECHNICAL CONCEPTS**
RESTROOM HYGIENE THROUGH TECHNOLOGY

## SUPPLEMENTAL MANUFACTURER'S REPRESENTATIVE AGREEMENT

| | |
|---|---|
| Effective Date: | November 1, 2003 |
| Representative: | Ben Veal<br>6621 Park Valley Drive<br>Clarkston, MI 48348 |
| Trade: | See attached list of distributors |
| Commissions: | 10% on product and 7% on dispensers at printed distributor prices. Commission on orders at lower than printed distributor prices will be changed accordingly to 5% on product and dispensers.<br><br>Commission is paid by the 25th of the month for the prior month's shipments. |
| Terms and Conditions: | This agreement may be terminated by either party with a written 30-day notice. Manufacturer Representative or Group is required not to represent any line selling competitive products without prior approval by Technical Concepts. |

By: _George Patrick Murphy_
George Patrick Murphy
President – CEO
Technical Concepts, L.L.C.

By: _Ben Veal_
Ben Veal

Date: 11/17/03

Date: 11/5/03

*World Headquarters:* 1301 Allanson Road, Mundelein, Illinois 60060 U.S.A. ☎ (847) 837-4100 • Fax: (847) 837-4110

1


PLAINTIFF'S EXHIBIT
13



## AGREEMENT

This AGREEMENT (the "Agreement") is made and entered into as of the 9 day of August, 2005, by and between BENNIE N. VEAL ("VEAL"), an individual residing at 6621 Park Valley Drive, Clarkston, Michigan 48348, and TECHNICAL CONCEPTS, LLC ("TECHNICAL CONCEPTS"), a Delaware Limited Liability Company located at 1301 Allanson Road, Mundelein, Illinois 60060.

### WITNESSETH:

WHEREAS, VEAL warrants that he is the owner of all right, title and interest in U.S. Patent No. 5,603,127 titled "Auto Flush for Tank Toilet," which issued on February 18, 1997, and U.S. Patent No. 6,618,864 titled "Automatic Flushing And Seat Raising Arrangements For Toilets," which issued on September 16, 2003 (hereinafter the "Patent Rights") relating to an automatic toilet flush system for tank type toilets covered by the scope of the subsisting and unexpired claims of the Patent Rights (hereinafter the "Licensed Products");

WHEREAS, VEAL is also in possession of certain knowledge and information directed to construction and mounting of automatic toilet flush systems to a vast majority of, existing tank type toilets (hereinafter the "Know-How");

WHEREAS, TECHNICAL CONCEPTS desires to obtain an exclusive worldwide license under the Patent Rights and Know-How, to manufacture, have manufactured, use, sell, offer to sell and import Licensed Products under the terms and conditions set forth herein;

1



PLAINTIFF'S
EXHIBIT
C

WHEREAS, TECHNICAL CONCEPTS desires to obtain exclusive rights to the worldwide distribution of Licensed Products, which right shall be exclusive as to VEAL as well as all other parties; and

WHEREAS, TECHNICAL CONCEPTS desires to use the services of VEAL in the development and production of Licensed Products, and VEAL agrees to make his services available to TECHNICAL CONCEPTS to develop and produce Licensed Products for worldwide distribution by TECHNICAL CONCEPTS.

NOW, THEREFORE, in consideration of the mutual promises of the parties as set forth herein, and other valuable consideration, the adequacy of which is hereby acknowledged by the parties, it is agreed as follows:

1.      VEAL hereby grants to TECHNICAL CONCEPTS a exclusive worldwide license, even as to VEAL, under the Patent Rights and the Know-How, to manufacture, have manufactured, sell, offer to sell, use, import, promote and distribute Licensed Products for the term of this Agreement, and any extensions thereof.

2.      TECHNICAL CONCEPTS shall have all rights to any improvement inventions and patents on such improvements relating to the Patent Rights, Know-How, and/or Licensed Products, including those improvements developed in whole or in part by VEAL related to the patent Rights and/or Licensed Products. TECHNICAL CONCEPTS shall bear the costs of the preparation, prosecution and maintenance of such improvement patents. TECHNICAL CONCEPTS shall be granted the right of first refusal for a patent license containing mutually agreeable terms with respect to any patented products relating to Know-How developed in whole or in part by VEAL that are not covered by the scope of the subsisting and unexpired claims of the

2



Patent Rights. If the parties do not agree to license terms within ninety (90) days, such right of first refusal shall lapse.

3.    At the request of TECHNICAL CONCEPTS, VEAL shall provide consulting and other services to TECHNICAL CONCEPTS relating to the design, development, production, and installation of Licensed Products for their intended use as defined in the Patent Rights and Know-How. TECHNICAL CONCEPTS shall compensate VEAL an amount of Seventy Five Dollars ($75.00) per hour, plus pre-approved expenses, for all time spent by VEAL in meeting with TECHNICAL CONCEPTS relating to the Licensed Products, and for working on projects authorized in advance in writing or by e-mail by an authorized agent of TECHNICAL CONCEPTS. VEAL shall keep true and accurate records of all development activities and shall make such records available to TECHNICAL CONCEPTS upon request.

4.    As of this date of the agreement VEAL has already received total royalty payments amounting to $11,113. VEAL will receive an additional royalty payment of $2,520 related to the Sloan FlushMate units sold before the date of this agreement. VEAL relinquishes any claims related to U.S. Patent Application No. 10/678,865 filed as October 3, 2003 against Kenneth J. Munderlak and Technical Concepts, LLC.

5:    VEAL shall receive, from TECHNICAL CONCEPTS a royalty of One Dollar ($1.00) per unit for each Licensed Product developed in whole or in part by VEAL pursuant to paragraph 3 above sold to distributors or direct to buildings. VEAL shall receive a royalty of Two Dollars ($2.00) per unit for each Licensed Product developed in whole or in part by VEAL pursuant to paragraph 3 above sold to a retailer at

3

a higher price than Licensed Products are sold to distributors by TECHNICAL

CONCEPTS. If TECHNICAL CONCEPTS sells Licensed Products developed in whole

or in part by VEAL pursuant to paragraph 3 above to OEM producers of tank type toilets,

TECHNICAL CONCEPTS shall pay VEAL a royalty of One Dollar ($1.00) for each unit

of such Licensed Product sold to such OEM producer. The One Dollar ($1.00) per unit

royalty for OEM sales can be modified by mutual agreement of the parties.   As of the

date of the last signature below by VEAL and TECHNICAL CONCEPTS, the Licensed

Products included within the terms of this paragraph shall be the AutoFlush(r) for Tank

Toilet Unit in its present configuration as shown in the Installation Instructions attached

at Exhibit A, which uses an actuator that is mounted to the overflow pipe for raising a lift

arm to open the flap in a tank-style toilet, and the Sloan FlushMate in its present

configuration as shown in the Installation Instructions attached at Exhibit B, which uses

an IntelliFlush automatic actuator that is mounted directly on top of a flush mechanism

and has a gear reduction train to actuate the flushing of a pressure assisted flush toilet.

VEAL acknowledges he is not currently working on any other products with

TECHNICAL CONCEPTS under this Agreement.

      6.     Royalty payments pursuant to paragraphs 4 and 5 above shall be

paid by TECHNICAL CONCEPTS to VEAL monthly, the first payment to be made

within thirty (30) days after the end of each first calendar month in which royalties are

due subsequent to the application of the advance against royalties set forth in paragraph 4

above.  Subsequent royalty payments shall be made within thirty (30) days after the end

of each following calendar month.  With each payment, TECHNICAL CONCEPTS shall

furnish VEAL with a true and accurate statement setting forth the amount of Licensed



Products developed in whole or in part by VEAL pursuant to paragraph 3 above sold to distributors, buildings, retailers, and OEM producers during the preceding calendar month.

       7.    At the sole discretion of TECHNICAL CONCEPTS, VEAL, or a sales organization under the control of VEAL, may be paid a commission by TECHNICAL CONCEPTS for sales generated by VEAL or by such sales organization. The rate of commission paid pursuant to this paragraph shall be determined by TECHNICAL CONCEPTS, and commissions payable pursuant to this paragraph shall be remitted within sixty (60) days following receipt of a proper invoice covering such commission or commissions. VEAL and/or the sales organization he controls shall obtain written permission from TECHNICAL CONCEPTS before contacting or calling on any account or potential account to sell or offer for sale the Licensed Products.

       8.    VEAL makes the following warranties:

          (a)    that he has the unencumbered authority to enter into this Agreement;

          (b)    that no other person or entity has any ownership or license interest in the Patent Rights and/or Know-How, and that no other person or entity has, or could assert, a ship right in the Patent Rights and/or Know-How; and

          (c)    that the Licensed Products do not infringe upon any third party patent rights, to the best of Veal's knowledge.



9. TECHNICAL CONCEPTS shall have the right, but shall be under no obligation; to prepare and file in the name of TECHNICAL CONCEPTS, applications for letters patent for the Licensed Products in countries outside the United States. All rights in such applications and any patents issuing thereon shall be the property of TECHNICAL CONCEPTS, but shall be subject to the terms and conditions of the Agreement. TECHNICAL CONCEPTS shall pay the entire cost of preparing, filing, prosecuting, and maintaining such foreign patent applications and patents, and shall have the right to choose its own attorney for this purpose. VEAL will cooperate in such filings by executing all required documents, delivering evidence of inventorship, and executing assignments, and the like.

10. TECHNICAL CONCEPTS shall keep accurate records containing all the information required for the computation and verification of the royalties to be paid pursuant to paragraph 5 above, and VEAL or his designated agent shall have the right to inspect such records at reasonable times during normal business hours after giving TECHNICAL CONCEPTS reasonable prior notice.

11. Where feasible and practical, TECHNICAL CONCEPTS agrees to mark all Licensed Products sold and distributed hereunder with proper notice of patent as prescribed under 35 U.S.C. § 287 or other applicable laws.

12. Should any letters patent licensed hereunder be infringed, TECHNICAL CONCEPTS shall, in its own name and in the name of VEAL and at TECHNICAL CONCEPTS' own expense and with diligence, have the right without obligation to prosecute any action necessary to protect the rights of each of the parties under this Agreement. If TECHNICAL CONCEPTS shall fail to do so, VEAL may, at

6

VEAL's expense, prosecute any such action. Any damages, costs, or other monetary recovery awarded as a result of such lawsuit shall be the sole property of VEAL if he brings the lawsuit. If TECHNICAL CONCEPTS brings the lawsuit, any recovery shall be for the account of TECHNICAL CONCEPTS, subject to the terms of this Agreement with VEAL being paid royalties on any damages recovered according to paragraph 5 above, after litigation fees and costs expended by TECHNICAL CONCEPTS in pursuing such lawsuit are deducted. The nonprosecuting party in any such lawsuit shall, at such party's expense, be entitled to noncontrolling participation through counsel of such party's selection.

13.     With the expiration of the last patent covering the Licensed Products herein, the royalty rates of paragraph 5 shall be reduced by seventy-five percent (75%) and shall continue at twenty-five percent (25%) of the royalty rate stated in paragraph 5 above based on the Know-How and trade secrets provided by VEAL to TECHNICAL CONCEPTS, subject to the following:

(a)     In the event that any letters patent within the scope of this Agreement shall be declared invalid by a court of competent jurisdiction in a final decision from which no appeal is or can be taken, this Agreement shall be terminated as to that patent.

(b)     If TECHNICAL CONCEPTS shall fail to pay royalties in accordance with the terms of this Agreement, or shall otherwise fail to comply with the material terms of this Agreement, VEAL shall have the right to terminate this Agreement upon giving ninety (90) days' written notice to TECHNICAL CONCEPTS. If TECHNICAL CONCEPTS shall fail to pay all royalties in arrears, or otherwise fail to

7

comply with the terms of this Agreement within such 90-day period, VEAL shall have the option to terminate this Agreement at the expiration of the 90-day period.

(c)     This Agreement may be terminated at either party's option upon receivership or bankruptcy of the other party, or if the other party should make an assignment for the benefit of creditors.

(d)     No termination of this Agreement shall relieve TECHNICAL CONCEPTS of its obligation to pay to VEAL all royalties accrued to the time of termination.

14.     The provisions of this Agreement shall be severable, and if any provision of this Agreement shall be held or declared to be illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not effect any other provision hereof, and the remainder of this Agreement, disregarding such invalid portion, shall continue in full force and effect as though such void provision had not been contained herein.

15.     This Agreement contains the entire agreement between the parties hereto with respect to the subject matter and supersedes and cancels all previous written or oral understandings, agreements, negotiations, commitments, or any other writing or communications in respect of such subject matter. This Agreement may not be released, discharge, abandoned, changed, or modified in any manner except by an instrument in writing signed by each of the parties hereto.

16.     This Agreement shall be deemed to be made and entered into pursuant to the laws of the State of Illinois, and, in the event of any dispute, shall be

8

governed by and shall be construed and interpreted in accordance with the laws of the State of Illinois. Any action brought under this Agreement by either party shall be brought in one of the courts located in the State of Illinois.

17. The language used in this Agreement shall be deemed to be language chosen by both parties to express their mutual intent, and no rule of strict construction against either party shall apply to any term or condition of this Agreement.

18. The waiver by either of the parties of any breach of any provision hereof by the other party shall not be construed to be either a waiver of any succeeding breach of any such provision or a waiver of the provision itself.

19. Nothing herein shall be construed to place the parties in a relationship of partners or joint venturers, and neither party shall have the power to obligate or bind the other in any manner whatsoever.

20. This Agreement and License shall be assignable by VEAL only with the written approval of TECHNICAL CONCEPTS, and shall be binding upon and inure to the benefit of the legal representatives and assigns of VEAL. This Agreement and License shall be assignable by TECHNICAL CONCEPTS only with the written approval of VEAL and shall be binding upon and inure to the benefit of the legal representatives and assigns of TECHNICAL CONCEPTS, except that TECHNICAL CONCEPTS may transfer this Agreement and License without the approval of VEAL upon the sale of the portion of the business of TECHNICAL CONCEPTS to which this Agreement and License pertains.

9



21.     Any notice, payment, or statement required by this Agreement shall be in writing and either delivered personally or sent by registered or certified mail, postage prepaid, to the addresses first listed above. A party may designate another address by notice to the other. All notices shall be effective as of the date of personal delivery or mailing.

10

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

BENNIE VEAL

JACK VRESICS
President and CEO
Technical Concepts, LLC
A Delaware Limited Liability Company

11

NEAL ▪ GERBER ▪ EISENBERG

Athanasios Papadopoulos
Attorney at Law

Tel 312.269.5982
Fax 312.429.3575
tpapadopoulos@ngelaw.com

April 29, 2013

**VIA E-MAIL AND CERTIFIED MAIL**

Rubbermaid Commercial Products LLC
Attention: Geoff Rogers
3 Glenlake Parkway
Atlanta, GA 30328

   **Re: Ben Veal**

Dear Mr. Rogers:

   We are in receipt of the one page summary schedule you provided to us in response to Mr. Ben Veal's request to inspect certain relevant documents pursuant to the provisions of paragraph 10 of the Agreement dated August 9, 2005. As you know, paragraph 10 of the Agreement provides that:

> [Rubbermaid Commercial Products LLC] shall keep accurate records containing **all the information required for the computation and verification of the royalties to be paid pursuant to paragraph 5 above**, and VEAL or his designated agent shall have the right **to inspect such records** at reasonable times during normal business hours after giving [Rubbermaid Commercial Products LLC] reasonable prior notice.

(Emphasis added). That one page summary schedule is not compliant with paragraph 10 of the Agreement which requires Rubbermaid Commercial Products, LLC to provide Mr. Veal with "all the information required for the computation and verification of the royalties to be paid pursuant to paragraph 5 ... ." Based on the summary schedule alone, there is no way for Mr. Veal to verify if the information set forth in the schedule is accurate.

   Without waiving Mr. Veal's audit rights pursuant to paragraph 10 of the Agreement, and in an effort to work cooperatively with you, we request that you provide the following information/documents with respect to all models of the AutoFlush for Tank Toilet Unit, generic and branded, sold domestically and internationally, as well as all models of the Sloan FlushMate-IntelliFlush sold domestically and internationally, for the years 2001 through 2013:

   (1) A breakdown of the number of units sold:

     (a) to distributors,

     (b) direct to builders and contractors,



PLAINTIFF'S
EXHIBIT
_D_

NEAL, GERBER & EISENBERG LLP

Rubbermaid Commercial Products LLC
April 29, 2013
Page 2

        (c)     to retailers, and

        (d)     to OEMs;

    (2)     The name of each customer that purchased either the AutoFlush for Tank Toilet Unit or the Sloan FlushMate-IntelliFlush;

    (3)     The date each unit was sold;

    (4)     The sales price for each unit sold;

    (5)     Monthly inventory reports for all models of the AutoFlush for Tank Toilet Unit, generic and branded, sold domestically and internationally, and all models of the Sloan FlushMate-IntelliFlush sold domestically and internationally; and

    (6)     Monthly reports identifying the number of AutoFlush for Tank Toilet Units and the Sloan FlushMate-IntelliFlush units manufactured or purchased for all models sold, generic or branded, domestically and internationally.

    Please let me know if you have any questions or if you would like to discuss this matter further. We expect to receive the foregoing information/documents by May 20, 2013. Thank you.

                      Sincerely,

                      Athanasios Papadopoulos

cc:    Michael G. Kelber
       Thomas C. McDonough

**From:** Rogers, Geoffrey [mailto:Geoffrey.Rogers@newellco.com]
**Sent:** Friday, June 15, 2012 10:56 AM
**To:** AutoFlush-Tank; beiman@elsm.com
**Subject:** Ben Veal/RCP (your file 623655)

Dear Brian and Ben,

Thank you for the attached letter, in which you have requested records under section 10 of our agreement.

As I explained in my letter dated June 1, RCP has sold no "licensed products" (defined as "an automatic toilet flush system for tank type toilets covered by the scope of the <u>subsisting and unexpired</u> claims of the Patent Rights"). In light of that, our agreement gives you no right to inspect any RCP record.

However, in light of our longstanding relationship with you, and our desire to conclude this matter in a mutually satisfactory manner, I report that we sold 1019 units of the Autoflush in Q1 of 2012. A copy of our records is attached to verify that amount.

Our proposed settlement expires today, and I have not received your response. We will extend the deadline to June 29th. Please contact me as soon as possible to discuss our offer.

Finally, please confirm receipt of this email.

Sincerely,

Geoff

**Geoff K. Rogers**

**Patent Counsel**

**Newell Rubbermaid Inc**

**3 Glenlake Parkway**

**Atlanta, GA 30328**

**Office: 770-418-7786**

**Cell: 678-488-2901**







**AUTOFLUSH TANK ROYALTY**
**Q1 2012**

| Author | XX02766 | Last Refreshed | 05/22/2012 15:29:08 |
|---|---|---|---|
| Current User | CV17250 | Key Date | 05/22/2012 |
| Last Changed by | XX04189 | Changed At | 02/13/2012 00:04:54 |
| InfoProvider | ZCOPA_C01 | Status of Data | 05/22/2012 09:30:10 |
| Query Technical Name | ZCOPA_C01_Q0017 | Relevance of Data (Date | 05/22/2012 |
| Query Description | Invoice Sales to Std Cost and Product_Std Marg | Relevance of Data (Time | 06:30:10 |

| | | | | | Fiscal Year/Period | 001/2012 | 002/2012 | 003/2012 |
|---|---|---|---|---|---|---|---|---|
| Profit Center | | Prod Hier: Prod Fam | | Material | | Sales quantity | Sales quantity | Sales quantity |
| 1021700 | CP-WASHROOMS | Autoflush | FG401816 | AFT WRLS WHT GEN | | 14 UNT | 13 UNT | 5 UNT |
| | | | FG474283 | AFT TLT WRLS WHT MERLIN SSS | | | 4 UNT | |
| | | | FG600535 | AFT INTELLIFLUSH ON-WALL SUN | | | 540 UNT | |
| | | | FG750630 | AFT 2 WRLS WH GEN | | 78 UNT | | 30 UNT |
| | | | FG750631 | AFT 2 WRLS WH TC | | 39 UNT | 52 UNT | 244 UNT |
| Result | | | | | | 131 UNT | 609 UNT | 279 UNT |

**Total Q1 2012**     **1,019 UNT**



**AUTOFLUSH TANK ROYALTY**
**Q4 2011**

Per Unit royalty:
$1.00

| | |
|---|---|
| Fiscal Period Range (Mandatory) | 011/2011 |
| Author | XX02786 |
| InfoProvider | ZCOPA_C01 |
| Query Technical Name | ZCOPA_C01_Q0017 |
| Query Description | Invoice Sales to Std Cost and Product_Std Margin Analysis |
| Key Date | 12/1/2011 |
| Last Refreshed | 12/1/2011 12:21:40 |
| Status of Data | 12/1/2011 06:30:18 |
| Relevance of Data (Date) | 12/1/2011 |

| Profit Center | | Prod Hier: Prod | Prod Hier: Prod Line | Material | | Quantity Sold |
|---|---|---|---|---|---|---|
| 1071700 | CP-WASHROOMSOLUTION | Autoflush | Autoflush Tank | FG474283 | AFT TLT WRLS WHT MERLIN SSS | 4 |
| | | | | FG750830 | AFT 2 WRLS WH GEN | 60 |
| | | | | FG750831 | AFT 2 WRLS WH TC | 88 |
| | | | **Result** | | | 162 |



PLAINTIFF'S EXHIBIT
www.legalstore.com No. 7002

WRONG PAYMENT

| | |
|---|---|
| **SAP VENDOR: 3017929** | |
| **VENDOR NUMBER** B000550000 (Legacy) | |

| [x] CHECK REQUEST | NAME (PAYEE) | Ben Veal |
|---|---|---|
| [ ] CREDIT MEMO | ATTENTION: | |
| | P. O. BOX | |
| **SPECIAL HANDLING INSTRUCTIONS** | STREET ADDRESS | 22823 Dublin Way |
| **\*\*DUE UPON RECEIPT\*\*** | CITY, STATE | Lake Barrington, IL  60010 |

| DATE | DESCRIPTION | QUANTITY | AMOUNT |
|---|---|---|---|
| 12/02/11 | November 2011 Royalty per Agreement— Calculation Enclosed (AutoFlush Tank) | | 88.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL $ | 88.00 |

| G/L ACCOUNT DISTRIBUTION | | CALCULATIONS CHECKED | DATE |
|---|---|---|---|
| 225310  Accrued Royalties | 152.00 | | 12/2/2011 |
| 1680    Company Code | | | |
| 1071700 Profit Center | | | |
| | | **FINAL APPROVAL** | **DATE** |
| | | | |
| | | | |
| TOTAL | $    152.00 | | |